IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARPENTERS PENSION AND ANNUITY PLAN OF PHILADELPHIA AND VICINITY et al., Plaintiffs, | : : : : : | CIVIL ACTION |
| v. | : : | |
| VINCENT GROSSO, Defendant. | : : | No. 07-5013 |

**MEMORANDUM**

Schiller, J.                                                                                                                    August 6, 2009

      Plaintiffs Carpenters Pension and Annuity Plan of Philadelphia and Vicinity ("Pension Plan"), Carpenters Health and Welfare Plan of Philadelphia and Vicinity ("Health Plan") and Piotr Tonia, a fiduciary of the Plans, bring this ERISA action against Defendant Vincent Grosso, a beneficiary of the Plans, to recover Plan payments made to Grosso to which he was not entitled. Plaintiffs' Amended Complaint asserts the following claims, pursuant to ERISA and federal common law, against Grosso: (1) enforcement of Pension Plan terms; (2) enforcement of Health Plan terms; (3) breach of pension contract; (4) breach of health contract; (5) conversion; (6) constructive trust; (7) unjust enrichment; (8) breach of fiduciary duty; and (9) prohibited transaction. Grosso never responded to the Amended Complaint, and a default was entered on January 2, 2008.

      Plaintiffs filed a motion for default judgment seeking to recover $163,130.01 in pension benefits paid to Grosso since April 1, 1996 and $91,021.40 in earnings from the use of plan assets. Their motion assumed that Grosso received approximately ten years of Plan benefits that he was not entitled to because he engaged in work that subjected his benefits to suspension ("suspendible work"). On June 16, 2009, this Court denied Plaintiffs' outstanding motion without prejudice.

Plaintiffs ultimately renewed their motion and supplemented the previously filed exhibits with additional exhibits, including Grosso's deposition. Although Grosso was served with the initial motion and the amended version, his counsel informed the Court that he would not be filing any response.

I.   **BACKGROUND**

Grosso applied for early retirement pension benefits on March 16, 1996, at the age of 59. (Hackett Decl. ¶ 9.) He began receiving monthly benefits under the Pension Plan on April 1, 1996. (*Id.* ¶ 10.) With the exception of 1998, Grosso received annual checks in varying amounts from 1996 through 2006. (*Id*. ¶ 10.) Grosso also began receiving retiree health coverage under the Health Plan on May 1, 1996. (*Id.* ¶ 12.) Upon turning 62 in February of 1999, Grosso's early retirement supplement terminated and his monthly benefit payment decreased from March 1999 forward. (*Id.*)

At or prior to his retirement, Grosso received information concerning his benefits and their limitations, including summary plan descriptions for the Pension Plan and Health Plan, which explained the effect of suspendible work on those benefits. (Hackett Decl. ¶¶ 13-15 & Ex. MH1 [Mar. 1991 Retiree Reference Booklet] & Ex. MH2 [Oct. 1998 Retiree Reference Booklet] & Ex. MH3 [Pension Plan Benefits Effective May 1, 1989 with Amendments to April 30, 1995] & Ex. MH4 [May 1, 1988 Summary Plan Description] & Ex. MH5 [Plan of Benefits for Health Fund effective January 1, 2004] & Ex. MH6 [July 2003 Welfare Fund Summary Plan Description].) These documents explained that a retiree's pension and supplemental payments are subject to suspension "[i]f the Retiree returns to work in any phase of the Construction Industry for more than 40 hours per month." (*Id.* Ex. MH1 at MH13; *see also id*. Ex. MH4 at MH51-52.) Health Plan benefits

would terminate permanently if a beneficiary engaged in any such work. (*Id.* Ex. MH5 at MH59.)

Each year after his retirement, Grosso certified to the Plans that he was not engaged in suspendible work. (Hackett Decl. ¶ 16 & Ex. MH9 [Grosso Certifications].) Nevertheless, the Plans learned in late 2006 that Grosso was working in the construction industry for Martinelli Construction ("Martinelli"). (Hackett Decl. ¶ 17; Naughton Decl. ¶ 4.) Based on this discovery, the Plans terminated Grosso's benefits, effective January 1, 2007. (Hackett Decl. ¶ 19.) Grosso did not appeal those determinations. (*Id.* ¶ 20.) He had received a total of $163,130.01 in pension payments from the Pension Plan from 1996 through the end of 2006 and $50,000 in medical benefits through the Health Plan over that time. (*Id*. ¶ 12 & Ex. MH7 [Pension Payments].) Furthermore, as of December 31, 2008, the interest on the payments made to Grosso from April 1996 through December 2006 amounted to $91,021.40. (McKeogh Decl. ¶¶ 1, 5(a).)

According to the Amended Complaint Grosso performed suspendible work years prior to the 2006 discovery by the Plans. (Am. Compl. ¶ 16.) The Plans sent Grosso several letters and contacted him via telephone to ascertain the extent of this suspendible work. (Hackett Decl. ¶ 18 & Ex. MH10 [Letters from Hackett to Grosso].)

Despite Plaintiffs repeated attempts to obtain information and/or documentation from Grosso, he was less than forthcoming. He sent an unverified, undated statement that he was no longer working and that "the only time [he] worked was approximately [two and a half] weeks in December." (Hackett Decl. Ex. 11 [Grosso Statement].) This statement conflicted with independent observations of Grosso's work. (Hackett Decl. ¶ 7(k); Naughton Decl. ¶ 4.) Ultimately, after the Complaint was filed, Grosso turned over tax returns from tax years 1995-1997, 1999-2001 and 2003-2006, however, he failed to provide some of the supporting W-2s used to prepare those returns.

(Hope Decl. Ex. JH1[Grosso Tax Returns].)  He did not submit tax returns from 1998 or 2002.

Based on these documents, Plaintiffs surmised that Grosso had been working for Martinelli since shortly after his retirement but that Martinelli was paying him through Grosso's wife, who also worked for Martinelli, and that the increased income to her reflected on their joint tax returns was actually income earned by Grosso.  (*See* Pls.' Mem. of Law in Supp. of Pls.' Mot. for J. by Default [hereinafter "Pls.' Mem."] at 12 ("[A] gap in W-2 Forms for 1996 and a sudden and sustained increase in the pay from Martinelli Construction to Grosso's spouse from 1997 forward suggests that Grosso was regularly employed at that company from almost immediately after his retirement.").)  Since the tax returns were inconclusive, the Court ordered Grosso to produce all records of any work he performed from April 1996 through December 2006 that would have subjected his benefits to suspension, and ordered him to testify concerning any such work at a deposition.

A deposition was scheduled, but Grosso, through an attorney who was not representing him in this case, postponed the deposition.  Plaintiffs ultimately moved to hold Grosso in contempt.  A rule to show cause hearing was held on April 23, 2009.  Grosso appeared pro se.  He agreed to submit to a deposition on April 29, 2009 and to produce additional documents.

At his deposition, Grosso declined to answer questions pertaining to suspendible work "based upon [his] 5th Amendment rights."  (Supplemental Hope Decl. Ex. VG1 [Grosso Dep.] at VG(JH2)7-15.)  Grosso also produced an undated draft bankruptcy petition, which was prepared sometime after this case was filed.  (Supplemental Hope Decl. Ex. JH9 [Draft Bankruptcy Pet.].)  The petition confirms Grosso's employment by Martinelli for fourteen years.  (Supplemental Hope Decl. Ex. JH9 at JH(JH2)6.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs default judgments.  Once the Clerk of Court has entered default for failure to appear or otherwise respond, a party seeking judgment on a claim that is not for a sum certain may apply to the Court for a default judgment against the defaulting party. FED. R. CIV. P. 55(b)(2); *see Husain v. Casino Control Comm'n*, 265 F. App'x 130, 133 (3d Cir. 2008) ("[E]ntry of default by the Clerk under Federal Rule of Civil Procedure 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b)."). "If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before [any hearing on the matter]." FED. R. CIV. P. 55(b)(2).

A district court has discretion in determining whether default judgment should be awarded. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).  Three factors control the inquiry: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigible defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).  Culpable conduct in this context generally requires "'willfulness' or 'bad faith' of a non-responding defendant." *Hritz*, 732 F.2d at 1182.  However, "[r]eckless disregard for repeated communications from plaintiffs and the court . . . can [also] satisfy the culpable conduct standard." *Id.* at 1183.  A court must make findings concerning these three factors before entering a default judgment. *Emasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987).

5

**III.    DISCUSSION**

    **A.    Plaintiffs are Entitled to a Default Judgment**

        *1.    Prejudice to Plaintiffs*

The first factor in the analysis, the prejudice to the plaintiff if default is denied, weighs in favor of default. Plaintiffs spent nearly a year trying to resolve this matter out of court and a year and a half on this litigation. Despite knowledge of this litigation, Grosso refuses to defend himself. Furthermore, the draft bankruptcy petition suggests that Grosso contemplated filing for bankruptcy shortly after this case was filed, possibly to protect himself from the consequences of this action. Plaintiffs would clearly be prejudiced if they are left with no remedy simply because Grosso chose not to defend himself in this case. Indeed, in the absence of a default judgment, Grosso will likely evade judgment completely. *See Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005) ("The absence of the defendant is precisely the reason why the Federal Rules of Civil Procedure provide for default judgments, which safeguard plaintiffs when the adversary process has been halted because of an essentially unresponsive party.") (internal quotations omitted).

        *2.    Litigible defense*

"The showing of a meritorious defense is accomplished when 'allegations of a defendant's answer, if established on trial, would constitute a complete defense to this action.'" *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (quoting *Tozer v. Charles A. Krouse Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Grosso has not put forth any defenses to Plaintiffs' claims. Thus, this Court cannot ascertain whether he has any viable defenses to this action. *See Carpenters Health and Welfare Fund of Phila. and Vicinity v. Naglak Design*, Civ. A. No. 94-2829, 1995 WL 20848, at *2 (E.D. Pa. Jan. 18, 1995) (court was not in a position to

determine the existence of meritorious defenses when defendant had not filed an answer or otherwise responded). This factor is therefore neutral.

### 3. Culpable conduct

Plaintiffs have made numerous attempts to determine the extent of Grosso's suspendible work. Grosso has done nothing but evade these attempts. Indeed, Grosso stalled his court-ordered deposition and submitted to a deposition only after facing the possibility of being held in contempt. Furthermore, at the deposition, he refused to testify concerning his work history.

Despite having notice of all proceedings in this litigation, Grosso has chosen not to respond, apparently hoping that he can evade judgment permanently by not defending himself. Since Grosso has recklessly disregarded the proceedings in this case, this factor also weighs in favor of a default judgment. *See Hritz*, 732 F.2d at 1184 (it is within a court's discretion "to sanction a party who has callously disregarded repeated notices of a judicial proceeding.") (footnote omitted). Furthermore, there is no alternative sanction that would be more appropriate in this case. Since two of the relevant factors weigh in favor of default judgment and the third factor is merely neutral, default judgment is warranted.

### B. Plaintiffs are Entitled to Recover the Pension Plan Payments Made to Grosso

As a result of the default, this Court must take the factual allegations of the Amended Complaint as true. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Additionally, in a civil case, the Court may draw an adverse inference from Grosso's invocation of his Fifth Amendment rights to conclude that he did, in fact, engage in suspendible work from April 1996 through December 2006 and that he therefore was not entitled to receive any payments under the Pension Plan. *See SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994) ("[R]eliance

on the Fifth Amendment in civil cases may give rise to an adverse inference against the party claiming its benefits.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).  An adverse inference is particularly appropriate here because Grosso's silence severely prejudices Plaintiffs by obstructing their access to the information necessary to succeed on their claims.

Although Plaintiffs' factual allegations must be accepted, "[d]efault judgment is inappropriate, even where defendants have failed to appear, unless the plaintiff has provided well pleaded facts sufficient to establish a claim." *See Getty Petroleum Marketing, Inc. v. Saini*, Civ. A. No. 05-4732, 2006 WL 1344685, at *3 (D.N.J. May 15, 2006); *see also* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2688  (3d ed. 1998) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").  Plaintiffs argue that Defendant breached a fiduciary duty to the Plans by exercising his dominion and control over Plan assets and that he is therefore personally liable for the breach under Section 1109 of ERISA. Plaintiffs also argue that Grosso's violations of federal common law, on theories of unjust enrichment and conversion, make him liable to Plaintiffs for the overpayments he received.  Relief under these theories is premised on 29 U.S.C. § 1132(a)(3), which only provides for equitable relief. Plaintiffs' recovery under this provision of ERISA would therefore be limited by their ability to trace the unjustly received funds to Grosso's assets.  *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (plaintiff seeking restitution under Section 502(a)(3)(B) is limited to restitution "in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession").

8

Plaintiffs acknowledge that they cannot recover the benefits paid by the Health Plan since those benefits were paid to third parties. (Pls.' Mem. at 8.) However, they are entitled to recover the $163,130.01 in pension payments that Grosso received and the $91,021.40 in interest on those payments if Grosso is a fiduciary under ERISA. Pursuant to 29 U.S.C. § 1109, a fiduciary who breaches a fiduciary duty "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." An individual is a fiduciary under ERISA if, among other things, he "exercises any authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A)(i).

In *International Painters and Allied Trades Industry Pension Fund v. Aragones*, Civ. A. No. 07-1138, 2008 WL 2415025 (M.D. Fla. June 12, 2008), the court addressed a similar situation presented by this case. Dean Aragones, a beneficiary of the plaintiff fund, passed away and his wife was entitled to receive payments as his beneficiary. As a result of an administrative error, she received 130 payments more than she was entitled to receive. Upon realizing the error, the fund sent Mrs. Aragones a notice of overpayment, seeking return of the funds. When Mrs. Aragones neither responded nor repaid the money, the fund sued her alleging, among other things, that she was a fiduciary "to the extent that she has received benefits not due to her." *Id.* at *2.

Mrs. Aragones failed to respond to the fund's complaint and, after entry of default, the fund moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b). The court acknowledged that "not every beneficiary becomes a fiduciary of the plan after receiving and retaining an overpayment or other plan asset to which the beneficiary is not entitled." *Id.* at *1.

9

Nevertheless, the court concluded that Mrs. Aragones was a fiduciary subject to personal liability and entered judgment against her on that basis:

> In defaulting, the defendant admits that she and her husband executed an agreement electing to receive only sixty payments from the plan and that she nonetheless knowingly received and retained one hundred thirty additional benefit payments, all of which were plan assets. With explicit knowledge of the plan's right to the assets, the defendant held the assets of the plan and disposed of the assets (if she did) at her own risk.

*Id.* at *1; *see also Chao v. Day*, 436 F.3d 234 (D.C. Cir. 2006) (insurance agent who misappropriated plan assets for himself instead of purchasing insurance for plan was fiduciary because he exercised control over plan assets); *Lopresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997) (shareholder who commingled plan assets with company's general assets and used plan assets to pay company creditors acquired fiduciary status).

Grosso knew that his work with Martinelli would have subjected his benefits to suspension. Nonetheless, he repeatedly misrepresented to the Pension Plan that he was not working so that he could receive payments (plan assets) to which he was not entitled. Based on these undisputed facts and the above case law, Grosso became a fiduciary when he misrepresented his working status to usurp plan assets for his own benefit. Lying and misappropriating plan assets for one's own use breaches a fiduciary duty. *See Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) ("[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in . . . ERISA."). Accordingly, Grosso is personally liable to the Pension Plan for the payments he received as a result of his deception and the earnings on those payments.[1] *See generally* 29 U.S.C. §§ 1109, 1132(a)(2).

---

[1] Plaintiffs also seek an offset of Grosso's Pension Plan benefits in the amount that Grosso owes to the Plan. Since Grosso's benefits have been suspended and have not been reinstated, such a remedy appears inappropriate at this time. If Grosso's benefits are reinstated, Plaintiffs can return to this Court to seek an offset pursuant to 29 U.S.C. § 1056(d)(4).

Since this judgment is sufficient to make Plaintiffs whole, the Court need not award additional equitable relief.

  **C.**  **Attorneys' Fees**

    *1.*  *Plaintiffs are entitled to attorneys' fees*

Plaintiffs also seek $36,874.50 in attorneys' fees and $1,618.66 for costs incurred in connection with this case. A district court has discretion to award attorneys' fees and costs to a prevailing party in an ERISA case. 29 U.S.C. § 1132(g)(1). The Third Circuit has outlined five factors to consider in determining whether a fee award is appropriate: (1) the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorney's fees; (3) the deterrent effect of an award of attorneys' fees against the offending party; (4) the benefit conferred on the members of the ERISA plan as a whole; and (5) the relative merits of the parties' positions. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983).

The first factor, the offending party's culpability, weighs in favor of a fee award. "Culpable" conduct in this context "connotes conduct that is: blamable, censurable, at fault, involves a breach of legal duty, . . . or otherwise implies that the act or conduct is reprehensible or wrong." *Work v. Hartford Life and Accident Ins. Co.*, Civ. A. No. 04-2565, 2007 WL 3287392, at *2 (E.D. Pa. Nov. 5, 2007) (citing *McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256 (3d Cir. 1994)). Grosso acted wrongfully by lying to the Pension Plan so as to acquire payments that he was not entitled to receive. This establishes sufficient culpable conduct to satisfy the first factor.

The second factor is neutral. There is no evidence one way or another regarding Grosso's ability to satisfy a fee award.

The third factor, the deterrent effect, weighs in favor of a fee award. In assessing this factor,

a court should "consider[] whether it would serve the objectives of ERISA to award counsel fees in an effort to deter conduct of the kind in which the [defendant] engaged." *McPherson*, 33 F.3d at 258. Deterring beneficiaries from lying to acquire benefits beyond those that they are eligible to receive, as Grosso did here, would serve the objectives of ERISA by preserving the integrity of the plan and preventing improper depletion of plan assets. *See Plan Adm'r v. Kienast*, Civ. A. No. 06-1529, 2008 WL 1981637, at *2 (W.D. Pa. May 2, 2008) (deterrence factor weighed in favor of fee award when beneficiary received overpayment he refused to return). Thus, this factor weighs in favor of an award.

The fourth factor weighs slightly in favor of an award because this litigation has conferred a benefit on members of the Pension Plan as a whole by restoring to the Plan assets that should not have been diverted in the first place. The final factor, the relative merits of the parties' positions, likewise weighs in favor of an award because Plaintiffs' position has merit while Grosso has not advanced any position.

Since the majority of the *Ursic* factors weigh in favor of a fee award, Plaintiffs are entitled to recover the attorneys' fees they reasonably incurred in connection with this litigation.

    2.  *Plaintiffs' requested costs and fees are reasonable*

In determining the reasonableness of a fee award a district court must determine the number of hours reasonably expended in connection with the litigation and the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiffs bear the burden of establishing that their requested fee is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The Court has reviewed the time sheets submitted by Plaintiffs and finds the requested costs and fees to be reasonable and adequately supported. (*See* Supplemental Hope Decl. Ex. KC4 [Time Sheets through

June 25, 2009].) Plaintiffs' counsel charged reasonable hourly rates — $275 for a shareholder, $230 for associates and $95 for paralegals — and spent a reasonable amount of time on tasks related to this matter. Accordingly, Plaintiffs are awarded $36,874.50 in attorneys' fees. They are also entitled to recover $1,348.91 in costs.[2]

### IV.  CONCLUSION

Grosso was not entitled to receive the $163,130.01 worth of pension payments that he acquired by misrepresenting to the Pension Plan that he was not working. A default judgment against Grosso is therefore appropriate as the Pension Plan should be entitled to recoup the payments to Grosso as well as interest on those payments. Plaintiffs are also entitled to an award of costs and attorneys fees. An appropriate Order will be docketed with this Memorandum.

---

[2] Plaintiffs seek $1,618.66, however, the itemized list of expenses provided in support of their request only lists costs in the amount of $1,348.91.